*J. A. Magoon and W. L. Holokahiki,* for plaintiff.

*C. W. Ashford,* for defendants.

---

# IN THE MATTER OF THE APPLICATION OF G. C. KENYON ON BEHALF OF J. G. M. SHELDON,

### FOR A WRIT OF HABEAS CORPUS.

### APPEAL FROM CIRCUIT JUDGE FREAR.

HEARING, MARCH 21, 1893.          DECISION, MARCH 31, 1893.

### JUDD, C.J., BICKERTON AND FREAR, JJ.

The Courts of this country are not at liberty to discuss the question of the legal existence of the Government of which they form a part, and the laws of which they are called upon to administer.

The Executive and Advisory Councils sitting together are, under the Proclamation abrogating the monarchy and establishing the Provisional Government, the only legislative body of the Hawaiian Islands and the Courts take judicial knowledge of this fact.

This legislative body had authority to enact a law punishing contempts applicable to all persons, whether members of the legislature or not.

The warrant for the arrest of the person charged with contempt was signed S. B. D., "President and Chairman of the Executive and Advisory Councils of the Provisional Government of the Hawaiian Islands;" Held, that there arose a legal presumption that the signer of the warrant had the authority of the Councils for this act.

It was not necessary to set out in the warrant the order of the Councils to the Chairman to issue the same.

It was sufficient to state the offense charged in general terms.

OPINION OF THE COURT, BY JUDD, C. J.

This case comes to us on appeal from a decision of Circuit Judge Frear, filed February 24th last. Since that date Judge Frear has been appointed as a Justice of this Court.

A writ of *habeas corpus* was issued out of the Circuit Court upon the petition of G. C. Kenyon, on behalf of J. G. M. Sheldon. It was directed to the Marshal, W. G. Ashley, who made return as follows:

"W. G. Ashley, Marshal of these Islands, makes return of said writ as follows: That he holds the body of said John G. M. Sheldon by virtue of a warrant of arrest issued by the Hon. Sanford B. Dole, President and Chairman of the Executive and Advisory Councils of the Provisional Government of the Hawaiian Islands, and by the order of said Councils, on a charge of being guilty of contempt of said Councils, a copy of which is made a part hereof. Wherefore he prays said writ of *habeas corpus* may be dismissed and that said Sheldon, who is here produced in Court, may be remanded to the custody of the undersigned. "W. G. ASHLEY,

"Honolulu, February 16th, 1893. "Marshal.

"(Copy.)

"Provisional Government of the Hawaiian Islands.
"Warrant of Arrest.

"To the Marshal of the Hawaiian Islands, or his deputy, Greeting:

"You are commanded to arrest J. G. M. Sheldon, editor of the newspaper called the Hawaii Holomua, of Honolulu, and have him before the Executive and Advisory Councils of the Provisional Government of the Hawaiian Islands, at the Council Chamber, in said Honolulu, forthwith; to show cause why he should not be punished for contempt of the said Councils.

"Given under my hand this 15th day of February, A. D. 1893.

  [Sig.]        "SANFORD B. DOLE,
     "President and Chairman of the Executive and
       Advisory Councils of the Provisional Gov-
       ernment of the Hawaiian Islands.

"Executed the within warrant of arrest of the person of J. G. M. Sheldon, named herein, the 15th day of February, A. D. 1893.   [Sig.]   "W. G. ASHLEY,
 "A true copy.         "Marshal.
  "Attest:
  "W. G. ASHLEY, Marshal."

There were no further pleadings in the case and no evidence taken. It was urged on behalf of the petitioner, C. W. Ashford, counsel, that Sheldon should be discharged because the warrant set forth in the return is invalid and insufficient. It is invalid, says counsel, because the Executive and Advisory Councils of the Provisional Government had no power to authorize the issuance of the warrant, and it is insufficient because, though signed by the Chairman, it does not appear that the said Councils had authorized its issuance, and because it does not specify the grounds of arrest, that is, the nature and particulars of the alleged contempt.

From an inspection of the warrant it is evident that it purports to be issued not by a court of judicial character, but by a body exercising legislative functions. But it is urged by petitioner's counsel that legislative bodies under written constitutions have no implied authority to punish generally for contempt, and the Provisional Government is one of limited authority, having limited itself to the Constitution of 1887 and the Proclamation of the 17th January, 1893, and so the Executive and Advisory Councils had no legislative authority to pass the Act 10, which confers by its terms authority upon the Councils to punish for contempt. We answer that the Provisional Government having taken possession of all Government property and according to its Proclamation having

established itself as the Government of the Hawaiian Islands, abrogating the monarchy, it is the *de facto* Government. It is the Government and the only Government now existing in the Hawaiian Islands. The Courts of this country are not at liberty to discuss the question of the legal existence of the Government of which they form a part, and the laws of which they are called upon to administer.

Are the Executive and Advisory Councils sitting together a legislative body? On this point we adopt the argument and conclusion of Judge Frear in the decision appealed from, as follows:

"The Proclamation promulgated on the 17th of January, 1893, provides (Section 3) that the 'Provisional Government shall consist of an Executive Council of Four Members * * * who shall administer the Executive Departments of the Government * * * according to existing Hawaiian Law as far as may be consistent with this Proclamation; and also of an Advisory Council which shall consist of fourteen members,' and that 'Such Advisory Council shall also have general legislative authority.' It is contended by counsel that under this provision the Advisory Council alone has legislative power, and that the Executive Council cannot sit with them in the exercise of that power. But the Proclamation further provides (Section 5) that 'All Hawaiian Laws and Constitutional Principles not inconsistent herewith shall continue in force until further order of the Executive and Advisory Councils.' Now, it is difficult to see how 'general legislative authority' could be exercised by the Advisory Council alone, in view of the provision that 'all Hawaiian laws' not inconsistent with the Proclamation are to continue in force until further order of both Councils. The Advisory Council alone could neither amend nor repeal any Hawaiian law; and, since the common law has been adopted as Hawaiian law so far as to fill up the gaps which would otherwise exist in Hawaiian law, it is at least doubtful if the Advisory Council alone could pass any law whatever; for every law would be, by implication if not expressly, an amendment or repeal of some existing Hawaiian

law. To hold that the Advisory Council alone has legislative authority would be to annul Section 5 of the Proclamation, and that would be to defeat the purposes of the Proclamation. Instruments should, if possible, be so construed as to accomplish the purposes for which they were made. There is nothing in Section 3 of the Proclamation prohibiting the sitting together of both Councils as a legislative body, but on the other hand, Section 5 contains by unequivocal implication a grant of legislative power to both Councils.

"Under the Constitution of 1887 (Article 44), 'The legislative power of the kingdom is vested in the King and the Legislature, which shall consist of the Nobles and Representatives sitting together.' This would seem to exclude the Cabinet from participating in the exercise of the legislative power, just as Section 3 of the Proclamation, if standing alone, would seem to exclude the Executive Council from participating in the exercise of such power. But by another Article (42) of the Constitution, 'The Cabinet hold seats *ex officio*, in the Legislature.' Construing these Articles together, it has never been doubted that the Cabinet had a right to participate in legislation. But Section 5 of the Proclamation, if not in so many words, yet just as clearly, gives the Executive Council the right to participate in legislation. Thus construed, both sections may stand, and the Proclamation made effective. The two Councils sitting together are a legislative body. It is unnecessary here to consider the full extent of their powers."

We take judicial notice of the fact that these Councils are the legislative authority, and the only legislative authority of the Hawaiian Islands.

We pass now to the question whether the said Councils have the power to punish for contempts. An argument is suggested that Article 51 of the Constitution of 1887, which gives the power to the Legislature to punish for contempt, survives and was not abrogated by the Proclamation of January 17th. But the "Legislature" referred to in that Article is the Legislature described in the 44th Article of the Con-

stitution for which is now substituted under the Provisional Government the present legislative body consisting, as we have seen, of the Executive and Advisory Councils. It is urged upon us that a legislative body has no inherent power to punish generally for contempts, and the case of *Kilbourn vs. Thompson*, 103 U. S., 168, is cited to sustain this view. In this celebrated case it is made quite clear that the British House of Commons traces its general authority to punish for contempts to its early constitution as a judicial body, and holds that the Congress of the United States has not that authority, as its power must be found in some express grant in the constitution, or be found necessary to carry into effect such powers as are there granted. The Constitution of the United States gives authority to each branch of Congress to punish its own members for disorderly conduct, etc.; also to decide contested elections. And the House of Representatives has the sole power of impeachment of government officers, and in these instances where the examination of witnesses is necessary to the performance of these duties the House may fine or imprison a contumacious witness. And the Court is careful to say that they do *not* decide that the power to punish a person not a member for contempt does not exist to enable either House to exercise successfully their functions of legislation, but base their decision upon the fact that the subject matter of inquiry upon which the plaintiff Kilbourn was called to testify was judicial, and *not* legislative.

The Congress of the United States can only exercise such powers as are granted by the Constitution; all other powers remain in the several States composing the Union; and, in this view it is doubtful if Congress could enact a law authorizing itself to punish for contempt persons not members of that body. But in this country the legislative body, that is, the Executive and Advisory Councils sitting together, have passed "An Act relating to contempts," which was approved on the 31st January last. This Act, being Act 10, provides that the Executive and Advisory Councils sitting together, shall have authority to punish persons for contempt in certain

enumerated cases, and it is applicable to all persons whether members of the Councils or not. With this exception and a few other slight modifications, it is in substance the same as Article 51 of the Constitution of 1887. The Councils had authority under Section 5 of the Proclamation to enact this law, not being trammeled by any inhibition of any constitutional provision. Here then is express authority to punish for contempts. And we are of opinion that the Councils have inherent power also to exercise this authority in so far as the same is essential to the performance of their other functions.

Did the Executive and Advisory Councils authorize the Chairman to issue the warrant of arrest? We reply in the words of the decision appealed from:

"It is clear that he could not legally issue it without such authority. The warrant is entitled 'Provisional Government of the Hawaiian Islands,' which, by the terms of the Proclamation, consists of the Executive and Advisory Councils. It commands the Marshal to produce J. G. M. Sheldon 'before the Executive and Advisory Councils of the Provisional Government of the Hawaiian Islands at the Council Chamber.' It states the ground of arrest to be 'contempt of the said Councils.' It is signed by 'Sanford B. Dole, President and Chairman of the Executive and Advisory Councils of the Provisional Government of the Hawaiian Islands.' These expressions show at least *prima facie* that the warrant was issued by President Dole in his official capacity as chairman of said Councils, and that the title attached to his signature is not merely matter of description. He was, according to the practice of legislative assemblies, the proper officer to issue the warrant, and having issued it in this instance in his official capacity, it must be presumed that he did so with proper authority; in other words, that he acted legally rather than illegally. No order from the Councils to their Chairman need appear in the warrant. *Case of the Sheriff of Middlesex*, 11 Ad. & El., 273. Indeed, it is not customary to set forth any such order. It is usual in warrants of commit-

ment to recite a copy or the substance of the resolution of sentence passed by the assembly, but this contains no order to the presiding officer. He takes notice of the resolution and issues the warrant of commitment himself. Less formality is required in a warrant of arrest than in a warrant of commitment. But to put the matter beyond question, it is expressly stated in the return that the warrant was issued 'by the order of said Councils.' The truth of this statement is not denied. The return imports verity until it is impeached. It was unnecessary to set forth in the return a copy of the resolution or order of the Councils. *Church Hab. Corp.* Sec. 147. The warrant having been issued by the proper officer, it is competent to show *aliunde* that he had the requisite authority. If on the other hand the warrant purported to have been issued by the direct order of the Councils, it would be competent to show that such was not the case in fact. See *In re Rhodus*, 6th Haw. 343."

In *People vs. Nevins*, 1 Hill, 154, it was held that a "rule of a Court of Record that a defendant be committed for contempt, need not recite the prior proceedings; if it is such a rule as the Court might legally make under any supposable state of circumstances, all jurisdictional steps and matters of regularity are to be presumed." A return of this character must be construed liberally. *People vs. Nevins, supra,* 159 ; *Rex vs. Bethel,* 5 Mod. 19 ; *Stockdale vs. Hansard,* 9 Ad. & El. 1.

Does the warrant sufficiently specify the grounds of arrest? Again in answer we adopt the decision appealed from :

" It commands the Marshal to arrest J. G. M. Sheldon and have him before the Executive and Advisory Councils 'to show cause why he should not be punished for contempt of the said Councils.' A statement of the offense in general terms is sufficient. This is sufficient to show that the warrant was issued in a matter of which the Councils had jurisdiction, and is sufficient for the purpose of holding the party until more specific charges can be preferred against him. A warrant of commitment 'should only state the fact of the of-

fense in general terms, in order to show that the assembly has jurisdiction of it without setting forth the particular facts, which are supposed by the assembly to constitute the offense.' Cushing, Law & Prac. Leg. Ass., Sec. 670; *Gossett vs. Howard*, 10 Ad. & El. Q. B. 411; *Case of the Sheriff of Middlesex, supra.* Certainly no more should be required in a warrant of arrest issued for the purpose of bringing the alleged offender before the bar of the assembly. Indeed, it would seem to be the practice not to inform the offender of the charges against him until he appears before the assembly. Cushing, Sec. 667. Proceedings on contempt are of a summary nature. *Gossett vs. Howard, supra,* goes so far as to hold that the House of Commons may order a person to be brought before them compulsorily, without apprising him of the reason even in general terms."

It appearing that J. G. M. Sheldon, on whose behalf the petition is made, is held under a valid warrant of arrest issued by competent authority, he is hereby remanded to the custody of the Marshal.

*C. W. Ashford,* for petitioner.

*F. M. Hatch,* of counsel for respondent.